UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

Case Number:

**JOHANNE SAUVEUR and MASELAH SURMATY,** individually and on behalf of those similarly situated,

    **Plaintiffs,**

vs.                          **DEMAND FOR JURY TRIAL**

**PENNYMAC LOAN SERVICES, LLC,**

    **Defendant.**

_____/

## CLASS ACTION COMPLAINT

Plaintiffs Johanne Sauveur and Maselah Surmaty, by and through their undersigned counsel, on behalf of themselves and those similarly situated, hereby brings this class action against Defendant PennyMac Loan Services, LLC and alleges as follows:

## NATURE OF THE ACTION

1. This is a putative consumer class action brought under Rule 23 of the Federal Rules of Civil Procedure by Plaintiffs Johanne Sauveur and Maselah Surmaty, on behalf of themselves and all others similarly situated against Defendant PennyMac Loan Services, LLC (hereinafter referred to as "PENNYMAC" or "Defendant") seeking damages and injunctive relief to redress the unfair and deceptive practices committed by PENNYMAC in connection with its home mortgage loan servicing business. PENNYMAC is a major non-bank residential mortgage servicer

1

in the United States. PENNYMAC services home loans according to uniform practices designed to maximize fees assessed on consumers' accounts.

## PARTIES JURISDICTION AND VENUE

2. Plaintiff Johanne Sauveur is an individual citizen of the State of Florida, residing in Miami-Dade County. Plaintiff is the original borrower on the loan encumbering the subject property and is the current title holder of said property.

3. Plaintiff Maselah "Maz" Surmaty (hereinafter referred to as "Plaintiff") is an individual citizen of the State of Florida, residing in Miami-Dade County. Plaintiff was the Successor in Interest to Johanne Sauveur, the original borrower of the subject property, for which Plaintiff obtained temporarily obtained title during the relevant time period.

4. Defendant PENNYMAC is a Delaware corporation with its principal place of business located in Westlake Village, CA.

5. PENNYMAC is a "debt collector" as defined by the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., ("FDCPA"), Section 559.72(9), Florida Statutes ("Florida Consumer Collection Practices Act" or "FCCPA").

6. PENNYMAC was the servicer of the mortgage loans as alleged herein.

## JURISDICTION AND VENUE

7. This Court has general diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the Plaintiffs and the Defendant. This Court also has jurisdiction over this matter pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§1332(d). CAFA's requirements are satisfied in that (1) the members of the Class exceed 100; (2) the citizenship of at least one proposed Class member is different from that of the Defendant; and (3)

the matter in controversy, after aggregating the claims of the proposed Class members, exceeds $5,000,000.00, exclusive of interest and costs.

8. The Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this action arises out of the FDCPA, a federal statute. The Court also has supplemental jurisdiction over the FCCPA and Section 701.04(1)(a), Florida Statutes claims under 28 U.S.C. § 1367, because these claims are so related to the federal FDCPA claims that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper pursuant to 28 U.S.C. § 1391 because Defendant is subject to jurisdiction and regularly conducts business in this District.

## LEGAL FRAMEWORK APPLICABLE TO THE CLAIMS

### FDCPA

10. The purpose of the FDCPA is "to eliminate abusive debt collection practices . . . to promote consistent State action to protect consumers against debt collection abuses…" 15 U.S.C. § 1692.

11. The FDCPA generally prohibits debt collectors, including PENNYMAC, from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt" [§ 1692e], and the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f, including, but not limited to:

   a. False representations or misrepresentations of "the character, amount, or legal status of any debt." *Id.* at § 1692e(2)(A);

   b. False representations or misrepresentations of any "compensation which may be lawfully received by [the] debt collector for the collection of a debt." *Id.* at §

1692e(2)(B);

c. "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* at § 1692f (1); and "The use of any false representation or deceptive means to collect or attempt to collect" a debt. *Id.* at § 1692e (10).

## FCCPA

12. The purpose of the FCCPA is to "provide the consumer with the most protection possible." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010) (citing § 559.552, Fla. Stat.).

13. Like the FDCPA, the FCCPA prohibits persons, including PENNYMAC, from engaging in certain abusive practices in the collection of consumer debts. *See generally* § 559.72, Fla. Stat.

14. Specifically, the FCCPA states that no person, including PENNYMAC, shall "claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." § 559.72(9), Fla. Stat.

## FDUTPA

15. FDUTPA is a Florida State consumer protection statute designed to protect the consuming public from those who engage in unfair methods of competition, unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce. Fla. Stat. §501.202(2).

16. FDUTPA imposes liability on any person or entity who engages in "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce…" Fla. Stat. § 501.204(1).

17. The remedies available under FDUTPA "are in addition to remedies otherwise available for the same conduct under state or local law." Fla. Stat. § 501.213; *Delgado v. J.W. Courtesy Pontiac GMC-Truck, Inc.*, 693 So. 2d 602, 605 (Fla. 2d DCA 1997).

## GENERAL FACTUAL ALLEGATIONS

18. PENNYMAC is a mortgage loan servicer that regularly services mortgage loans throughout the United States.

19. The loan servicer's duties and obligations are clearly defined by the CFPB when the loan is either serviced by the lender itself or sold to third-party servicer entities such as PENNYMAC.

20. In its role as mortgage loan servicer, PENNYMAC was responsible for preparation of items concerning the Note and Mortgage including, but not limited to, preparing, and sending monthly statements, accounting for credit and debits on the Note, calculating, collecting, and disbursing escrow amounts, sending notices, overseeing the judicial foreclosure process including providing information for the same, and calculating payoff figures and transmitting payoff figures.

21. Additionally, as part of its loan servicing responsibilities, PENNYMAC regularly issues loan payoff statements, collects loan payoff payments, drafts, and processes the paperwork necessary to release the mortgage lien once payment has been satisfied.

22. The documents necessary to be filed, once a mortgage has been paid off or satisfied, to release the mortgage are created by PENNYMAC utilizing its mortgage servicing software

programs and the databases contained therein as part of PENNYMAC's normal servicing functions.

23. Moreover, as stated, PENNYMAC has an obligation to prepare "payoff statements" that set forth the correct amounts required to fully satisfy all obligations secured by the loan serviced by Defendant. Payoff statements include information on fees owed, including a recording fee, amongst other items.

24. Payoff Statements generated by PENNYMAC are governed by Federal rules and regulations and their drafting is set forth by PENNYMAC policies and procedures, ultimately being uniform in composition and form.

25. PENNYMAC includes on its uniform payoff statement a charge for "Release Costs." The payoff statement does not explain what the source of this $22.50 "Release Cost" is and whether it is valid, an estimate, or actually incurred.

26. Moreover, under Florida law, the only valid fees associated with the filing and recording of a satisfaction of mortgage, once the loan is paid off, counties charge to release are contained within the recording fees, originated by the county. The charge for the "Release Costs" is not imposed by the county in which the property encumbered by the mortgage is located.

27. Servicers are only allowed to charge for government recording fees actually charged by the county recorder's office and are not allowed to charge a fee for the preparation of the mortgage satisfaction documents, unless otherwise allowed by law.

28. Thirty-six jurisdictions, including Alabama, Arizona, Arkansas, Connecticut, District of Columbia, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Mississippi, Montana, Nebraska, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, South Dakota, Tennessee, Texas, Utah, Vermont,

Virginia, Washington, West Virginia, Wisconsin, and Wyoming, do not allow by law for lenders or servicers to charge any fees, associated with the preparation and filing of the satisfaction of mortgage, other than actual governmental recording fees.

29. On or about April 6, 2023, Plaintif Surmaty purchased, at a public auction, title to the Property. The Property was auctioned in accordance with a final judgment entered by the Miami-Dade County Circuit Court in an action to foreclose a lien for unpaid homeowners' association assessments filed by the governing homeowners' association against the previous owner under Chapter 720 of the Florida Statutes.

30. Because title to the Property was purchased via a homeowners' association's foreclosure action, Plaintiff Surmaty acquired title to the Property subject to the previous owner's first mortgage of record (the "Mortgage"). At all relevant times, PENNYMAC was the servicer of the Note and Mortgage secured by the Property.

31. On or about April 23, 2024, the foreclosure sale in the homeowners' association case was vacated and title in the subject Property reverted back to Plaintiff Sauveur.

32. On January 15, 2022, a foreclosure lawsuit ("Lawsuit") was filed against the initial borrower, Johanne Sauveur pursuant to the terms of the Note and Mortgage secured by the Property.

33. The Plaintiff in the Lawsuit was PENNYMAC, the case was filed in the 11th Judicial Circuit, in and for Miami-Dade County, Florida and the case number is 22-000854-CA-01.

34. Both Plaintiffs made requests for payoff figures to Defendant related to the Property as title holders or borrowers of the Property.

35. Both Plaintiffs made their requests for Payoff figures from Defendant for the purposes of executing a payoff of encumbrances on the Property owned by Plaintiffs.

36. On or about July 5, 2023, Defendant knowingly, willfully, and intentionally transmitted a payoff statement concerning the Property to Plaintiff Surmaty, a copy of which is attached as Exhibit "A". The above-mentioned payoff statement was received by Plaintiff Surmaty from Defendant.

37. Within the payoff statement's total fees, PENNYMAC knowingly, intentionally, and willfully included charges for "Release Costs" in the amount of $22.50.

38. On or about August 25, 2023, Defendant knowingly, willfully, and intentionally transmitted a payoff statement concerning the Property to Plaintiff Sauveur, a copy of which is attached as Exhibit "B". The above-mentioned payoff statement was received by Plaintiff from Defendant.

39. Within the payoff statement's total fees, PENNYMAC knowingly, intentionally, and willfully included charges for "Release Costs" in the amount of $22.50.

40. Like the Thirty-Six jurisdiction identified above, Florida law does not allow a lender or servicer to charge for the preparation of the documents to record the satisfaction of mortgage or release of lien, and only requires that actual governmental recording fees be paid to the county recorder's office. *See* Florida Statutes § 701.04(2).

41. Recording fees for legal documents are set by county in which the document is being recorded. In the State of Florida, the recording fee charged by the county recording office for the first page is $10.00 and each additional page recorded is $8.50.

42. PENNYMAC improperly overcharged Plaintiff $22.50 as a "Release Costs", which is more than the actual cost to record a lien release in Miami-Dade County, Florida. Upon

information and belief, PENNYMAC retains the overcharge for itself as profit instead of passing on the entire amount to the third-party county recorders.

43. This "Release Cost[]" is nothing but a junk fee PENNYMAC is charging borrowers to pocket for extra profit for itself, on services it is obligated to perform and for which it is forbidden to charge for by law.

## CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this suit as a class action on behalf of themselves and others similarly situated pursuant to Federal Rules of Civil Procedure, rules 23(a), 23(b)(2), and/or 23(b)(3) on behalf the Class as defined as follows:

> All persons in the Florida who have or had mortgages serviced by Defendant, (i) who received or are entitled to receive payoff statements; and (ii) who received mortgage payoff statements from Defendant which charged "Release Costs."

45. Plaintiffs reserve the right to modify or amend the proposed class definitions before the Court determines whether certification is appropriate.

46. Excluded from the Class are Defendant, and Defendant's parents, subsidiaries, affiliates, officers and directors, any entity in which Defendant has a controlling interest, all mortgagors who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members, and members of the staffs of the judges to whom this case should be assigned.

47. Under Fed. R. Civ. P. 23(a)(1), the proposed class is made up of at thousands of individuals, the joinder of whom are impracticable except by means of a class action. The disposition of the claims in a class action will benefit both the parties and the Court. The exact number of class members can be determined through discovery and review of PENNYMAC's business records.

48. The proposed class is ascertainable because it is defined by reference to objective criteria. In addition, and upon information and belief, the names and addresses of all members of the proposed class can be identified in business records maintained by PENNYMAC.

49. In conformance with Fed. R. Civ. P. 23(a)(2), all Class Members' claims (including Plaintiffs') are unified in that they arise from the same improper charging of Release Costs that are prohibited by law, arising out of materially identical circumstances and common course of conduct of PENNYMAC. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the proposed class.

50. Consistent with Fed. R. Civ. P. 23(a)(3), Plaintiffs are members of the Class. Their claims are typical of all other Class Members. All Class Members' claims are unified, as all were victims of the same charging practices.

51. Consistent with Fed. R. Civ. P. 23(a)(4), Plaintiffs will adequately represent the class because they have interests in common with the proposed Class Members and he has retained attorneys who are experienced in class action litigation.

52. Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

53. Pursuant to Fed. R. Civ. P. 23(b)(3), there is a well-defined community of interest in the questions of law and fact involving and affecting the class to be represented by Plaintiffs. Common questions of law and/or fact predominate over any questions affecting only individual members of the class. Common questions include, but are not limited to, the following:

   a. Whether Defendant's practice of charging a Release Costs where it is prohibited by law violates FDCPA and its implementing regulations;

    b. Whether Defendant's practice of charging a Release Costs where it is prohibited by law violates FCCPA and its implementing regulations;

    c. Whether Defendant's practice of charging Release Costs where it is prohibited by law violates FDUTPA.

    d. Whether Plaintiffs and Class Members are entitled to statutory damages under the FDCPA, FCCPA, FDUTPA and the amounts thereof;

    e. The proper measure of disgorgement and/or actual and/or punitive damages and/or restitution, as well as other recovery to the class, including fees and costs.

    f. Whether Defendant fails to provide homeowners with accurate balance information; and

    g. The nature and extent of any other relief that should be provided.

54. Class certification under Fed. R. Civ. P. 23(b)(3) is superior to other available methods for the fair and efficient adjudication of this controversy. Since the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it difficult for the Class Members to seek redress for the wrongful conduct alleged. Plaintiff knows of no difficulty which will be encountered in the management of this litigation that would preclude its maintenance as a class action.

55. Even if members of the Class could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might

otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

56. Alternatively, certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because it is clear that declaratory and injunctive relief is appropriate respecting the Class as a whole.

## COUNT I

### VIOLATION OF THE FAIR DEBT COLLECTION ACT 15 USC § 1692e
### (On behalf of Plaintiff Sauveur and the Members of the Class)

57. Plaintiff Sauveur repeats and realleges paragraphs 1 through 43 as if fully stated herein.

55. Plaintiff Sauveur and each Class Member was a "consumer" as defined by 15 U.S.C. § 1692a(3).

56. The mortgage loans encumbering the property of Plaintiff Sauveur and Class Members, which PENNYMAC service, are debts under the FDCPA because each is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

57. Additionally, the improper fees being charged and collected, in the form of the "Release Costs" are incidental to the principal obligation and subject to the Act. 15 U.S.C. § 1692f(1).

58. PENNYMAC is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiff and Class Members via Payoff

Statements. The Payoff Statement described above indeed uniformly confirmed this by identifying PENNYMAC as a debt collector.

59. PENNYMAC engaged in direct "communications" with Plaintiff and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for payoff of their mortgage loans, which included the improper fees stated herein.

60. The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

61. Congress created shared, substantive statutory rights of Plaintiff Sauveur and the Class Members to be privately enforced and protected under the FDCPA, which PENNYMAC has violated. *See* 15 U.S.C. §§ 1692, 1692e, 1692f.

62. 15 U.S.C. §1692e states, in relevant part, that:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> ……
>
> (2) The false representation of—
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
> ………
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

63. Based on the foregoing allegations, PENNYMAC used deceptive means of collecting debts—which contained illegal fees for "Release Costs" incorporating them—in

violation of 15 U.S.C. § 1692e(10), because it represented them in Payoff Statements in a confusing, inaccurate manner, or in a manner that would likely mislead a consumer.

64. Based on the foregoing allegations, PENNYMAC violated 15 U.S.C. § 1692e(2)(A) because through its Payoff Statements imposing "Release Costs" incorporating them, it falsely or in a misleading manner stated, or mispresented, the amount, character, or status of the amounts needed to payoff Plaintiff's and Class Members' mortgage debts.

65. Based on the foregoing allegations, PENNYMAC violated 15 U.S.C. § 1692e(2)(B) when through its Payoff Statements imposing "Release Costs", it falsely or in a misleading manner stated, or mispresented, the compensation that it might lawfully receive from Plaintiff and Class Members.

66. These violations of FDCPA caused injury to Plaintiff Sauveur and Class Members by violating the foregoing substantive FDCPA rights.

58. As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorneys' fees and costs under 15 U.S.C. § 1692(k).

## COUNT II

### VIOLATION OF THE FAIR DEBT COLLECTION ACT 15 USC § 1692f
### (On behalf of Plaintiff Sauveur and the Members of the Class)

59. Plaintiff Sauveur repeats and realleges paragraphs 1 through 43 as if fully stated herein.

60. Plaintiff Sauveur and each Class Member was a "consumer" as defined by 15 U.S.C. § 1692a(3).

61. The mortgage loans encumbering the property of Plaintiff Sauveur and Class Members, which PENNYMAC service, are debts under the FDCPA because each is "an[]

obligation or alleged obligation of a consumer to pay money arising out of a transaction . . . [that is]…primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(5).

62. Additionally, the improper fees being charged and collected, in the form of the "Release Costs" are incidental to the principal obligation and subject to the Act. 15 U.S.C. § 1692f(1).

63. PENNYMAC is a "debt collector" of those mortgage loans as defined by 15 U.S.C. § 1692a(6) because it regularly attempts to collect, and collects, amounts owed or asserted to be owed or due another, including the mortgage debts from Plaintiff Sauveur and Class Members via Payoff Statements. The Payoff Statement described above indeed uniformly confirmed this by identifying PENNYMAC as a debt collector.

64. PENNYMAC engaged in direct "communications" with Plaintiff Sauveur and Class Members as defined by 15 U.S.C. § 1692a(2) when it sent them or their representatives Payoff Statements, purportedly demanding money due for payoff of their mortgage loans, which included the improper fees stated herein.

65. The FDCPA creates a private right of action under 15 U.S.C. § 1692k.

66. 15 U.S.C. § 1692f states, in relevant part:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

67. Based on the foregoing allegations, PENNYMAC used unfair means of collecting amounts for "Release Costs" incorporating them in violation of 15 U.S.C. § 1692f, because the

amounts were not expressly authorized by Plaintiff's and Class Members' mortgage instruments creating their debts as they must be under those instruments, or they were not permitted by law.

68. These violations of FDCPA caused injury to Plaintiff Sauveur and Class Members by violating the foregoing substantive FDCPA rights.

69. As a result of these violations, Plaintiff Sauveur and Class Members are entitled to statutory damages together with reasonable attorneys' fees and costs under 15 U.S.C. § 1692(k).

## COUNT III

### VIOLATIONS OF FLORIDA'S CONSUMER COLLECTION PRACTICES ACT § 559.72(9), FLA. STAT
**(On behalf of Plaintiffs and the Members of the Class)**

70. Plaintiffs repeat and reallege paragraphs 1 through 43 as if fully stated herein.

71. Section 559.72, Florida Statutes, of the FCCPA mandates that "no person" shall engage in certain practices in collecting consumer debts.

72. PENNYMAC is a "person" within the meaning of the FCCPA.

73. The mortgage loans encumbering the properties of Plaintiffs and Class Members, and being serviced by PENNYMAC, are each a "debt" under the FCCPA because each one is "an[] obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." § 559.55(6), Fla. Stat.

74. The FCCPA creates a private right of action. See § 559.77, Fla. Stat.

75. The Florida Legislature created shared, substantive statutory rights of Plaintiffs and Class Members to be enforced and protected privately under the FCCPA, which PENNYMAC violated. §§ 559.72, 559.72(9), 559.77, Fla. Stat.

76. Under Section 559.72, Florida Statutes,

   In collecting consumer debts, no person shall:

   ……

   (9) Claim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate or assert the existence of some other legal right when such person knows that the right does not exist.

77. Based on the foregoing allegations, PENNYMAC violated Section 559.72(9), Florida Statutes, by attempting to collect "Release Costs" incorporating them, when, as stated above, it knew that the fees, and as a corollary, the total amounts incorporating them, were not legitimate debts.

78. Based on the foregoing allegations, PENNYMAC violated Section 559.72(9), Florida Statutes, by attempting to collect "Release Costs" incorporating them, when, as stated above, it knew it had no legal right to collect the fees, and as a corollary, no legal right to collect the total amounts incorporating them.

79. These violations of FCCPA caused injury to Plaintiffs and Class Members by violating the foregoing substantive FCCPA rights.

80. As a result of these violations, Plaintiff and Class Members are entitled to statutory damages together with reasonable attorney's fees and costs under Section 559.77, Florida Statutes.

## COUNT IV

## VIOLATIONS OF FLORIDA'S UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
## FLA. STAT. §§ 501.201, et seq.
## (On behalf of Plaintiffs and the Members of the Class)

81. Plaintiffs repeas and reallege paragraphs 1 through 43 as if fully stated herein.

82. Florida's Unfair and Deceptive Trade Practices Act (Fla. Stat. §§ 501.201, *et seq*.) prohibits unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.202(2).

83. A practice is "deceptive" within the meaning of Florida's Unfair and Deceptive Trade Practices Act if it is likely to mislead consumers.

84. Plaintiffs and Class Members are consumers as defined by section 501.203, Fla. Stat. PENNYMAC is engaged in trade or commerce within the meaning of the FDUTPA.

85. PENNYMAC violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

86. Plaintiffs and Class Members are consumers who have been aggrieved PENNYMAC's unfair and deceptive practices by being charged excessive and illegal "Release Costs" to PENNYMAC for recording and releasing the one-page satisfaction/release of mortgage lien, when such recording fees only amounted to $10.00 and PENNYMAC retained the difference as profit.

87. The harm suffered by Plaintiffs and the Class Members was directly and proximately caused by the deceptive and unfair practices of PENNYMAC, as more fully described herein.

88. Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiffs and the Class Members make claims for actual damages, attorneys' fees and costs.

89. PENNYMAC still utilizes many of the deceptive acts and practices described above and is still secretly retaining money from every "Release Costs" it charges consumers. Plaintiffs and the Class Members have suffered and will continue to suffer irreparable harm if PENNYMAC

continues to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiffs and the Class Members to obtain both declaratory or injunctive relief to put an end to PENNYMAC's unfair and deceptive practices.

## JURY DEMAND

90. Plaintiffs respectfully request a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of himself and all members of the Class, pray for relief as follows:

a. Certifying Plaintiffs' claims for class treatment under Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), appointing Plaintiffs as Class Representatives, and appointing Plaintiffs' attorneys as counsel for the Classes;

b. For an order awarding compensatory damages on behalf of Plaintiffs and the Classes in an amount to be proven at trial;

c. Awarding statutory damages together with pre-judgment interest;

d. For judgment for Plaintiffs and the Class on their claims in an amount to be proven at trial, for compensatory damages caused by Defendant's unfair or deceptive practices, for exemplary damages to each Class Member for each violation;

e. For an order enjoining Defendant from continuing its unfair, unlawful, and/or deceptive practices, and any other injunctive relief as may appear necessary and appropriate;

f. For pre-judgment and post-judgment interest as provided for by law or allowed in equity;

g. Awarding reasonable attorneys' fees and costs, including experts' fees; and,

    h.  Granting such other and further relief, in law or equity, as this Court may deem appropriate and just.

Dated: June 4, 2024.

                                            By: *Scott D. Hirsch*
                                            Scott David Hirsch
                                            **SCOTT HIRSCH LAW GROUP**
                                            Fla. Bar No. 50833
                                            6810 N. State Road 7
                                            Coconut Creek, FL 33073
                                            Tel: (561) 569-7062
                                            Email: scott@scotthirschlawgroup.com